UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CA NO. 1:11-CV-11997-JGD

MARIA BARBOSA, HENRIQUETA BARBOSA,
MANUEL BARBOSA and ANGELA BARBOSA,
        Plaintiffs,

Vs.

WILLIAM K. CONLON IN HIS CAPACITY AS CHIEF OF
POLICE FOR CITY OF BROCKTON, MA, THOMAS
HYLAND, BRYAN MAKER, JESSE DRANE
KENNETH LOFSTRUM, BRYAN DONAHUE,
STEVEN E. JOHNSON, MARK CELIA,
MICHAEL DUBE, FRANK BAEZ,
ANTHONY GIARDINI, EMANUEL GOMES
LEON MCCABE AND JOHN DOE 1-3
        Defendants

**DEFENDANTS WILLIAM CONLON, THOMAS HYLAND, BRYAN MAKER, JESSE DRANE,  KENNETH LOFSTRUM, BRIAN DONAHUE, STEVEN JOHNSON, MARK CELIA, MICHAEL DUBE, FRANK BAEZ, ANTHONY GIARDINI, EMANUEL GOMES AND LEON MCCABE'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
PURSUANT TO FED.R.CIV.P. 56(C)**

## I.   STATEMENT OF THE CASE

This is an action brought by the Plaintiffs for events surrounding their arrests on or about November 15, 2008 by the Defendants, all of whom are police officers with the City of Brockton.

All of Plaintiffs federal claims are predicated on violations of the Fourth, Fifth and Eighth Amendments to the United States Constitution.  FOOTNOTE Specifically, the Plaintiffs allege that they were subjected to excessive force in violation of the  United States Constitution pursuant to 42 U.S.C. Section 1983.  (Counts I and III), as well as the companion Massachusetts Civil Rights law, M.G.L. c. 12 Sections 11(h) and (i) (Counts II, IV and VI).

Plaintiffs further allege Defendants conducted a warrantless search of their home in violation of 42 U.S.C. Section 1983 (Count VII).  Plaintiff's final federal claim is that the Defendants did not provide them medical assistance in violation of 42 U.S.C. Section 1983 (Count V).

Finally, Plaintiffs allege various state intentional torts against the Defendants, to wit, false arrest (Counts VIII and IX); assault (Counts X and XI), battery (Counts XII, XIII and XIV) and intentional infliction of emotional distress (Count XV).

For the reasons expressed below, Defendants are entitled to summary judgment as there are no disputed material facts.

## II. STATEMENT OF THE CASE

Defendants hereby adopt their Statement of Undisputed Material Facts filed coterminously with this Memorandum.

## III. STANDARD OF REVIEW

Summary judgment is appropriate if "any pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law."  *Fed.R.Civ.P. 56(c).*  The Supreme Court has held:

> . . . In our review, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The First Circuit has identified what constitutes a genuine issue of material fact:

> To satisfy the criterion of trial worthiness, and thereby forestall summary judgment, an issue must be "genuine," that is, the evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, must be sufficiently open-ended to permit a rational fact finder to

>resolve the issue in favor of either side.
>*National Amusement, Inc. v. Town of Dedham*,
>43 F.3d 731, 735 (1st. Cir. 1995).

This Court must determine if there are genuine issues of material fact. Only disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).

To defeat this motion, a plaintiff cannot state mere conclusions or rely only on the allegations contained in the Complaint. The Supreme Court has stated that "[T]he mere existence of a scintilla of evidence in support of the plaintiff's opposition will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252.

Further, once the movant avers an absence of evidence to support the opposing party's claims, the opposing party "must go beyond the allegations of the complaint and present evidence significantly probative and substantial to establish the existence of an issue of fact that is both "genuine" and "material." *Sheinkopf v. Stone*, 927 F.2d 1259, 1261, 1262 (1st Cir. 1991); See also, *Feliciano v. State of Rhode Island*, 160 F.3d 780,783 (1st Cir. 1998) *citing Serrano-Cruz v. DFI Puerto Rico, Inc.*, 109 F.3d 25 (1st Cir. 1997). The non-movant cannot simply rest upon mere allegations. *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). "Trialworthiness requires not only a 'genuine' issue but also an issue that involves a 'material' fact." *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995). A material fact is one which has the "potential to affect the outcome of the suit under applicable law." *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993).

Defendants need only show, that is, point out to the Court, that there is an absence of evidence to support the non-moving party's case. <u>Celotex Corp</u>. at 325. In the instant record,

there is an absence of evidence to support the Plaintiff's claims and therefore said action must be dismissed.

## IV. ARGUMENT

### A. PLAINTIFFS HAVE FAILED TO ALLEGE A STATE OR FEDERAL CONSTITUTIONAL VIOLATION AGAINST DEFENDANTS AS THEY ARE ENTITLED TO QUALIFIED IMMUNITY

The doctrine of qualified immunity seeks to protect government officials from the burdens of vindictive and harassing lawsuits which may inhibit them from properly exercising their powers, while at the same time, protecting private citizens from oppressive or malicious government action. *Knight v. Mills,* 836 F.2d 659, 665 1st Cir. (1987). The United States Supreme Court has held that government officials performing discretionary functions are shielded with a qualified immunity from "civil damages liability as long as their actions could reasonably have been fraught consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638 (1997).

The doctrine of qualified immunity is designed to "balance[ ] two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). We apply a two-prong analysis in determining whether this balance weighs in favor of granting a defendant qualified immunity. *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir.2009). We ask "(1) *105 whether the facts alleged ... by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right at issue was 'clearly established' at the time of the defendant's alleged violation." Id. (citing *Pearson*, 555 U.S. at 232, 129 S.Ct. 808). A right is "clearly established" if, given the legal contours of the right allegedly violated and the facts of the particular case, a reasonable officer would have understood that his conduct violated that

right. Id. "The relevant, dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. (quoting *Brosseau v. Haugen,* 543 U.S. 194, 199, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004)).

Plaintiff must with particularity assert his constitutional right that has allegedly been violated. *Anderson*, 483 U.S. 639. If plaintiff succeeds at that task, it then must be determined whether the constitutional right was clearly established at the time of the defendant's actions to ensure that the state actor had "fair warning" that the alleged action was, in fact, unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 740 (2002). Inquiring into whether or not the constitutional right was clearly established must take into consideration the particular circumstances at issue in the particular case. *Saucier v. Katz,* 533 US 194 (2001). Finally, qualified immunity is available to a state actor who violates a clearly established right if he acted under the mistaken but reasonable belief that his actions were lawful. See *Malley v. Briggs*, 475 U.S. 335, 341 (1986). This is consistent with the purpose of qualified immunity to avoid showing official actions by exposing officials to personal liability for good faith judgments. *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982). In order to defeat the defense of qualified immunity, a plaintiff before commencing a suit must be prepared with a *prima facie* case of defendant's knowledge of impropriety, actual or constructive. S*tratton v. City of Boston*, 731 F.Supp. 42, 49 (1989) (quoting *Krohn v. United States*, 742 F.2d 24, 31 1st Cir. (1984)).

1.  **WARRANTLESS ENTRY**

It is a " 'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.' " *Groh v. Ramirez,* 540 U.S. 551, 559, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (quoting *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); some internal quotation marks omitted). However, there are exceptions which can lead to warrantless entries and searches, i.e., warrantless entry onto private

property to fight a fire and investigate its cause, *Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), to prevent the imminent destruction of evidence, *Ker v. California,* 374 U.S. 23, 40, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) (plurality opinion), to engage in " 'hot pursuit' " of a fleeing suspect, *United States v. Santana,* 427 U.S. 38, 42, 43, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), the need to assist persons who are seriously injured or threatened with such injury. *Brigham City, Utah v. Stuart*, 547 US 398, (2006) An officer's subjective intent is irrelevant; what is germane is the objective effect of his actions. An action is "reasonable" under the Fourth Amendment, regardless of the individual officer's state of mind, "as long as the circumstances, viewed objectively, justify [the] action." *Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978) (emphasis added).

In the instant case, Officer Hyland—before entering the home—twice announced "police" yet received no acknowledgment. He then heard "we'll turn the music down, but we are going to just turn it up again when you leave." Faced with the possibility of having to return to the house on repeated occasions to deal with the loud music that was disturbing the peace of neighbors, Hyland entered the home. His action was justified, and this count of the Plaintiffs' complaint must be dismissed.

    2.    **EXCESSIVE FORCE**

Although excessive force is, by definition, unreasonable force, "reasonable people sometimes make mistake in judgments, and a reasonable police officer sometimes may use unreasonable force." *Morelli v. Webster*, 552 F.3d 12, 24 (1st Cir. 2009). When this occurs, "qualified immunity gives an officer the benefit of a margin of error." (Id.) See also, *Saucier v. Katz*, 533 U.S. 194, 205-6 (2001). For a plaintiff to defeat a qualified immunity defense, he must show "an incommensurate use of force beyond that needed to establish a garden-variety excessive force claim and, further, beyond the 'hazy border' noted by the *Saucier* court."

*Morelli,* 552 F.3 at 24.

A police officer may use such force as is reasonably necessary to arrest a suspect. *Graham v. O'Conner*, 490 U.S. 386, 396 (1989). The amount of force the arresting officer may use depends on the severity of the crime, and whether the Plaintiff poses an immediate threat to the safety of the officers or others and whether the suspect is actively resisting arrest. *Sietins v. Joseph,* 238 F.Supp. 366, 376 (D. Mass. 2003). Not every push or shove -- even if it may later seem unnecessary in the peace of a judge's chamber -- violates the Fourth Amendment. *Godette v. Stanley,* 490 F. Supp. 2d. 72, 78 (D. Mass. 2007). As the Court noted in *Graham*, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397. Reasonableness must be judged from the perspective of a reasonable officer on the scene rather than from the 20/20 vision of hindsight. *Graham v. O'Conner*, 490 U.S. 386, 396 (1989).

At the outset, Plaintiffs Henriqueta and Angela Barbosa have not identified any officer who had contact with them, while Plaintiff Maria Barbosa can only identify Defendant Johnson as coming into contact with her. Most importantly, and unfortunately for the Plaintiffs, they have not articulated that any of the police officers' actions were not objectively *unreasonable,* viewed in light of the facts and circumstances confronting them and without regard to their underlying intent or motivation. See, *Bastien v. Goddard*, 279 F.2d 10, 14 (1st Cir. 2002). At the time of the arrest of Plaintiffs Henriqueta and Angela Barbosa, both of them had assaulted Hyland, requiring him to use reasonable force to arrest them (Facts, 18 and 20). Defendant Johnson had repeatedly asked Maria Barbosa to calm down and leave the police lobby but she refuses, thus requiring him to place his hands on her to arrest her (Facts, 25-27). The actions of

7

both Hyland and Johnson were reasonable given the circumstances and, accordingly, there was no constitutional deprivation committed.

### 3. MEDICAL INDIFFERENCE

A police officer who fails to provide adequate medical treatment to an individual injured during apprehension violates the Fourteenth Amendment if such inattention constitutes deliberate indifference to serious medical needs. *Brace v. Massachusetts*, 673 F.Supp.2d 36, 40 (D.Mass.2009). A medical need is "serious" if so diagnosed by a physician or if a lay person would easily recognize the need for urgent medical attention. Id. at 40–41 (citing *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir.1990)). A showing of deliberate indifference, in this context, requires more than mere inadvertence or negligence. Rather, a plaintiff must establish that the officer was aware of a substantial risk of serious harm which he intentionally disregarded. Brace, 673 F.Supp.2d at 41. Stated another way, the plaintiff must prove that officers had a "culpable state of mind and intended wantonly to inflict pain." *LaFrenier v. Kinirey*, 478 F.Supp.2d 126, 140 (D. Mass.2007) (quoting *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir.1991).

Here, Plaintiffs' claims suffer from a fatal defect, as the actions described do not evince deliberate indifference.  Plaintiffs never asked for medical treatment and were not observed to require medical treatment, and therefore cannot prove they were denied same.

### B. PLAINTIFFS HAVE FAILED TO ALLEGE THREATS, INTIMIDATION OR COERCION UNDER THE MASSACHUSETTS CIVIL RIGHTS ACT

To state a claim under the Massachusetts Civil Rights Act ("MCRA"), a Plaintiffs must prove that (1) his/her exercise or enjoyment of rights secured by the constitution or laws of either the United States or the Commonwealth (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion.  *Swanset Development Corp. v. Taunton*, 423 Mass. 390, 395 (1966).

8

See also *Grant v. John Hancock Mut. Life Ins. Co.*, 183 F.Sup.2d 344, 371 (D.Mass.2002); *Appleton v. Town of Hudson*, 397 Mass. 812, 817 (1986) (whether a Plaintiff's rights have been interfered with need not be decided where, taking all inferences in favor of the Plaintiff, there are insufficient allegations that a defendant engaged in "threats, intimidation or coercion"); *Bally v. Northeastern University*, 403 Mass. 713, 717 (1989). Municipalities such as the City of Brockton cannot be liable under the MCRA. *Howcroft c. City of Peabody*, 51 Mass. App. Ct. 573 (2001).

Plaintiffs have failed to state a claim for which relief can be granted on a theory of a state civil rights violation merely because he was arrested. For the reasons expressed in Section B, *supra,* Plaintiffs' claim should be dismissed.

### C. DEFENDANT CONLON SHOULD BE DISMISSED BECAUSE HE IS BEING SUED IN HIS OFFICIAL CAPACITY

When a Plaintiff brings a civil action against a person in his official and individual capacity, it is crucial that the parties be properly identified to provide complete clarity as to who the parties are and in what capacity they are being sued. Attention to this detail is significant because it aides the court in determining which law will apply to each party. *Chute v. City of Cambridge*, 201 F.R.D. 27, 28-29 (D. Mass. 2001), *reversed on other grounds*, 281 F. 3d 314 (1st Cir. 2002); *see also, Stratton v. City of Boston,* 731 F. sup 42, 45 (D. Mass. 1989) This is because defenses such as qualified immunity are available to a defendant only in his individual capacity, not in his official capacity. (*Id.*). Therefore, a judgment awarding money damages against a person in that person's individual capacity is enforceable against the assets of that individual, but a judgment against an individual in his official capacity would be enforceable only against the public entity that the individual represents. (*Id.*). Suits against public employees in their official capacities are treated as suits against the public employer, or in this instance, the City of Brockton. *Id*. *at* *29* ("It is well- settled that filing a civil action against a city

official in that person's official capacity is simply another way of suing the city itself.")

In the instant case, Plaintiffs have specifically named Conlon as being sued in his is *official capacity* as a police officer, to wit, as Chief of Police. Because Defendant Conlon has allegations against him in his official employment position as a police officer, said claims must be dismissed, and treated as claims against the City of Brockton.

To that end, Plaintiff has failed to allege a custom, policy or practice of excessive force and/or false arrest evidencing a "deliberate indifference" to the rights of its inhabitants. *Monell v. New York City Dep't. of Soc. Svces.,* 436 U.S. 658, 98 S. Ct. 2018 (1978).

### D. PLAINTIFF HAS FAILED TO PROVE DEFENDANTS COMMITED ANY STATE TORTS

#### 1. Intentional Infliction of Emotional Distress

Under a theory of intentional infliction of emotional distress, the Plaintiff must prove that a Defendant: (1) intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct "extreme and outrageous" and was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community; (3) that the actions of the Defendant were the cause of the Plaintiff's distress; and (4) that the emotional distress sustained by the Plaintiff was "severe" and of a nature "that no reasonable man could be expected to endure." *Agis v. Howard Johnson*, 371 Mass. 140 (1976). Because there was probable cause to arrest Henriqueta, Angela and Maria Barbosa, this count must be dismissed. Where Plaintiff Manual Barbosa has suffered no physical injury, he cannot recover. *Id*.

#### 2. False Arrest

The tort of false arrest consists of the (1) intentional and (2) unlawful (3) confinement of a person, (4) directly or indirectly, (5) of which the person can find as conscious or is harmed by such confinement. *Wax v. McGrath*, 255 Mass. 340, 342 (1926). The claim for

false imprisonment, in this case, hinges on the determination as to whether there was probable cause to arrest the Plaintiff.  See *Ortiz v. County of Hampden*, 16 Mass. App. Ct. 138, 140 (1983).

For the reasons expressed in Section A, *supra,* Defendants had probable cause to arrest the Plaintiffs, and the tort for false arrest must be dismissed.

### 3. Assault and Battery

Assault and battery is the intentional and unjustified use of force upon the person of another, however slight, or the intentional doing of a wanton or grossly negligent act causing personal injury to another." *Commonwealth v. McCan*, 277 Mass. 199, 203, 178 N.E. 633, 634 (1931). A police officer "attempting a valid arrest has the right to use the force which is reasonably necessary to overcome physical resistance by the person sought to be arrested . . . ." *Julian v. Randazzo*, 380 Mass. 391, 396, 403 N.E.2d 931, 934 (1980). "The standard for determining whether force is reasonable for assault and battery claims is 'essentially the same' as the standard for determining if force is reasonable for Fourth Amendment excessive force claims." *Parker v. Town of Swansea*, 270 F. Supp. 2d 92, 102 (D. Mass. 2003). Therefore, "when a plaintiff alleges both a Fourth Amendment excessive force claim and an assault and battery claim in the same complaint, the constitutional claim and the common law claim 'rise or fall in the same manner.'" Id. (quoting *Jesionowski v. Beck*, 937 F. Supp. 95, 105 (D. Mass. 1996)).

For the reasons expressed in Section A, *supra,* Defendants had probable cause to arrest the Plaintiffs and used only necessary force, and therefore this count must be dismissed.

### V. CONCLUSION

For all the reasons expressed above, Defendants request this Honorable Court to allow their Motion for Summary Judgment, as there are no disputed material facts and they are entitled to judgment as a matter of law.

Defendants,
By their Attorney,

/s/*Stephen C. Pfaff*

_____
Stephen C. Pfaff BBO# 553057
Louison, Costello, Condon & Plaff, LLP
101 Summer Street
Boston, MA 02110
(617) 439-0305
spfaff@lccplaw.com

**CERTIFICATE OF SERVICE**

    I, Stephen C. Pfaff, hereby certify that on the 1st day of March, 2013, I served the foregoing electronically to the following:

Charles P. Kazarian, Esq.
Law Office of Charles P. Kazarian
160 State Street, Sixth Floor
Boston, MA 02109

/s/*Stephen C. Pfaff*

_____
Stephen C. Pfaff