UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARIA BARBOSA, HENRIQUETA          )
BARBOSA, MANUEL BARBOSA,           )
and ANGELA BARBOSA,                )
                                   )
        Plaintiffs,                )
    v.                             )
                                   )
WILLIAM K. CONLON in his Capacity  )     CIVIL ACTION
as Chief of Police for the City of )     NO. 11-11997-JGD
Brockton, MA, THOMAS HYLAND,       )
BRYAN MAKER, JESSE DRANE,          )
KENNETH LOFSTRUM, BRIAN            )
DONAHUE, STEVEN E. JOHNSON,        )
MARK CELIA, MICHAEL DUBE,          )
FRANK BAEZ, ANTHONY GIARDINI,      )
EMANUEL GOMES, LEON McCABE,        )
and JOHN DOES 1-3,                 )
                                   )
        Defendants.                )

## MEMORANDUM OF DECISION AND ORDER
## ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

June 10, 2013

DEIN, U.S.M.J.

## I.  INTRODUCTION

This action arises out of an altercation between the plaintiffs and various Brockton

police officers on November 15, 2008.  The plaintiffs have asserted claims for violations

of their federal and state constitutional rights as well as violations of their rights under

state law.  Discovery is complete, and the defendants have moved for summary judgment

on all counts of the complaint pursuant to Fed. R. Civ. P. 56(c).  (Docket No. 41).

The plaintiffs agree that the claims against defendants Bryan Maker, Kenneth Lofstrum, Michael Dube, Mark Celia, Anthony Giardini and the John Doe defendants should be dismissed.  Judgment shall enter in favor of those defendants and they will not be discussed further.  With respect to the claims against the other defendants, this court holds as follows:

1. The plaintiffs have failed to establish a claim against William K. Conlon in his official capacity as Chief of Police, and the claims against him are dismissed.

2. The plaintiffs have failed to establish their claims under the Massachusetts Civil Rights Act, and Counts II, IV and VI of the First Amended Complaint are dismissed.

3. Plaintiffs Henriqueta and Angela Barbosa have failed to establish their claims of false arrest, and Count VIII of the First Amended Complaint is dismissed.

4. Except as provided above, the motion for summary judgment is DENIED.

## II.  **STATEMENT OF FACTS**[1]

The defendant, William Conlon, is the Chief of Police for the City of Brockton, Massachusetts, and the remaining defendants are Brockton police officers.  The plaintiffs Henriqueta and Manuel Barbosa are the parents of plaintiffs Angela and Maria Barbosa.

---

[1] Unless otherwise indicated, the facts are derived from the Defendants' Statement of Undisputed Material Facts ("DF") (Docket No. 44), the Plaintiffs' Fed. R. Civ. P. 56(c)(2)(B)(i) Response to Defendants' Statement of Undisputed Material Facts ("PR") (Docket No. 47), and the Plaintiffs' Fed. R. Civ. P. 56(c)(2)(B)(ii) Additional Statement of Undisputed Material Facts ("PF") (Docket No. 46).

### The Altercation

On November 15, 2008, Officers Hyland and Donahue were assigned to a two-man police cruiser, when they received a dispatch call concerning loud music at 22 Leavitt Street in Brockton, the property owned by Henriqueta and Manuel Barbosa.  (DF ¶¶ 1, 13).  Upon their arrival at that locale, the Officers noticed beer bottles and alcoholic beverages on the porch, and heard loud music.  (DF ¶¶ 3-4).  While the police contend that Officer Hyland yelled "police" several times before entering the house through an open side door, the plaintiffs deny that there was any notice given before the police entered the premises.  (DF ¶¶ 2, 5-6; PR ¶¶ 2, 5-6).  Rather, the plaintiffs contend that plaintiff Henriqueta Barbosa, who was in the house, happened to turn towards her kitchen door and saw two policemen already in the house.  (PR ¶¶ 5-6).  In any event, it is undisputed that the police did not have a warrant to enter the home, and did not have the occupants' consent.  (See id.).  Officer Hyland asserts that he entered the home to "quell the disturbance" of the loud music.  (PF ¶ 5; DF ¶ 8).  He also contends that when he entered, someone said to him, "we will turn it down, but we are just going to turn it up when you leave."  (DF ¶ 7).  The plaintiffs deny that any such statement was made.  (PR ¶ 7).

The events that transpired after the police entered the premises also are in dispute. According to the defendants, Officer Hyland entered the premises first, heard very loud music, and went up to the second floor where he saw a DJ with headphones operating a turntable.  (DF ¶¶ 9-10).  There were about 15 people in the house at the time.  (DF ¶ 12; PR ¶ 12).  After he asked the man operating the music (later identified as Antonio

DaVeiga) to turn the music down, he did.  (DF ¶ 11).  However, when Officer Hyland went to leave the premises, he contends that someone shouted at him, he had a verbal altercation with someone else, and Henriqueta Barbosa threw a strainer full of silverware which hit Officer Hyland on the back of his head.  (DF ¶¶ 14-18).  Prior to being struck, Officer Hyland had called for backup because he felt that the situation could get out of control, and Officers Drane, Dube and Celia had arrived.  (DF ¶¶ 15, 21).  Officers Hyland and Drane placed Henriqueta under arrest, at which time plaintiff Angela Barbosa allegedly threw a cell phone at Officer Hyland, hitting him in the leg.  (DF ¶¶ 19-20).  Angela was then arrested too, and both women were charged with assault and battery with a dangerous weapon, among other things.  (DF ¶¶ 21-22).

The plaintiffs deny that they were in any way instigators of the altercation, or that they threw anything at Officer Hyland.  (PR ¶¶ 14-18, PF ¶¶ 32-33).  Rather, they contend that the music was turned down as soon as Mr. DaVeiga saw the police car lights outside. (PF ¶ 17).  Officer Hyland then requested that the music be turned off completely, which it was.  (PF ¶ 18).  According to the plaintiffs, Officer Hyland subsequently asked Henriqueta for identification so he could charge her with "anticipatory breach of the peace" despite there being no legal or factual basis for such a charge.  (PF ¶¶ 23-28). Officer Hyland then slipped and fell in the kitchen, falling on Henriqueta and on the strainer of silverware.  (PF ¶¶ 31, 34).  The plaintiffs further contend that Henriqueta was handcuffed, picked up, thrown against a wall or the basement door, thrown outside onto the porch and dragged to a police cruiser.  (PF ¶ 36).  Angela, who was one week post-

partum, was handcuffed, dragged by her arm and hair out of the house, and pulled down the porch steps to the police cruiser, which caused her to bleed from her recent cesarean section incision.  (PF ¶¶ 37-38).

The defendants have recently submitted evidence, which does not appear to be in dispute, showing that in connection with the charges arising out of this incident, Henriqueta admitted to sufficient facts to charges of assault and battery with a dangerous weapon, disturbing the peace, interfering with a police officer and resisting arrest. (Docket No. 54).  Similarly, the defendants have submitted evidence showing that Angela admitted to sufficient facts to charges of assault and battery with a dangerous weapon, interfering with a police officer and resisting arrest.  (Id.).  Both women received a six month continuance without a finding.  (Id.).  However, the record does not contain the details as to the facts to which the plaintiffs admitted.  It is unclear whether, or to what extent, the admissions in the criminal cases conflict with the plaintiffs' sworn testimony in this proceeding about the events of November 15, 2008.  Therefore, for purposes of the summary judgment motion, the plaintiffs' statements of facts, as supported by deposition testimony and other evidence, continue to constitute part of the record.

## Events at the Police Station

After their arrest, Henriqueta and Angela Barbosa were taken to the Brockton Police Department.  (DF ¶ 23).  Thereafter, according to the defendants, plaintiff Maria Barbosa arrived at the station and was verbally abusive to the police officers, yelling racial slurs, among other things. (DF ¶¶ 24, 27).  Maria refused to leave the premises, despite

repeated requests by the defendant Officer Johnson, who was behind the lobby service window.  (DF ¶¶ 25-27).  Maria was arrested by Officer Johnson and defendant Officer Baez, who was needed for backup, and charged with disturbing the peace.  (DF ¶¶ 28-29).

Again, the plaintiffs dispute the officers' version of events.  Rather, they contend that Maria, along with another sister, Nilda, went to the police station after learning that her mother and sister had been arrested.  (PF ¶¶ 39-40).  Maria and Nilda claim that they were repeatedly ignored, but were eventually told to leave and come back in 30 minutes to bail out Henriqueta and Angela.  (PF ¶¶ 39-43).  Maria decided to wait at the station instead of leaving and returning 30 minutes later, but Officer Johnson yelled at her and pushed her toward the exit.  (PF ¶¶ 44-45).  A struggle ensued during which Maria alleges that she was pushed and struck by Officer Johnson and others.  (PF ¶¶ 45-51).  Maria was then arrested.  The outcome of any criminal charges is not included in the summary judgment record.

According to the plaintiffs, Henriqueta needed medical attention for her right arm while in police custody, but her pleas for help were ignored.  (PF ¶¶ 53-54).  She contends that she needs surgery on her right shoulder for injuries she sustained as a result of the policemen's actions.  (PF ¶ 55).  The plaintiffs further allege that Angela also needed medical attention while in police custody due to the bleeding from her cesarean incision.  (PF ¶ 56).  However, Angela's requests for assistance were also ignored.  (PF ¶¶ 57, 59).  Similarly, the plaintiffs allege that Maria needed medical attention as a result of her altercation with the police, but her requests were ignored as well.  (PF ¶¶ 58-59).  In

addition, the three woman testified that during the course of the events at issue, the police made racial slurs about the fact that they were Cape Verdean, they told Henriqueta to "go back to her country" and the police called Maria an "immigrant bitch," among other things.  (PF ¶¶ 60-66).

By their First Amended Complaint the plaintiffs allege that the defendants are liable under 42 U.S.C. § 1983 for violating their Fourth, Fifth and Eighth Amendment rights by, *inter alia*, use of excessive force, entering their premises without a warrant, and being abusive to them and deliberately indifferent to their medical needs while in custody. (Counts I, III, V).  The plaintiffs allege further that such conduct violates the Massachu-setts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, § 11I.  (Counts II, IV, VI).  In addition, plaintiffs have asserted a direct claim for a violation of the Fourth Amendment to the U.S. Constitution based on the warrantless search (Count VII), and have asserted state law claims for false arrest (Counts VIII, IX), assault (Counts X, XI), battery (Counts XII, XIII, XIV) and intentional infliction of emotional distress (Count XVII).  Additional facts will be provided below as appropriate.

### III.  ANALYSIS

#### A.    Summary Judgment Standard of Review

Summary judgment is appropriate when the moving party shows, based on the discovery and disclosure materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor

of either party.'" Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting

Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)).  "A fact is material only if it

possesses the capacity to sway the outcome of the litigation under the applicable law." Id.

(quotations, punctuation and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine

issue of material fact.  See Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st

Cir. 2010).  If that burden is met, the opposing party can avoid summary judgment only by

providing properly supported evidence of disputed material facts that would require trial.

LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993).  Accordingly, "the non-

moving party 'may not rest upon mere allegation or denials of his pleading,'" but must set

forth specific facts showing that there is a genuine issue for trial.  Id. (quoting Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)).

The court must view the record in the light most favorable to the non-moving party and

indulge all reasonable inferences in that party's favor.  See Vineberg, 548 F.3d at 56.  "If,

after viewing the record in the non-moving party's favor, the Court determines that no

genuine issue of material fact exists and the moving party is entitled to judgment as a

matter of law, summary judgment is appropriate." Walsh v. Town of Lakeville, 431 F.

Supp. 2d 134, 143 (D. Mass. 2006).  Applying this standard to the instant case compels

the conclusion that the motion for summary judgment must be allowed in part and denied

in part.

### B.   <u>Qualified Immunity</u>

In Counts I - VI of their First Amended Complaint, the plaintiffs have asserted civil rights claims against the individual defendants under 42 U.S.C. § 1983 and the MCRA based on the defendants' alleged violation of their Fourth, Fifth and Eighth Amendment rights as guaranteed by the U.S. Constitution.  According to the plaintiffs, such violations occurred due to the defendants' use of excessive force, the defendants' conduct in entering their premises without a warrant, and the defendants' abusiveness and deliberate indifference to their medical needs while in custody.  The defendants argue that they are entitled to qualified immunity with respect to each of these claims, and that, in any event, the undisputed facts establish that there was no violation of the plaintiffs' constitutional rights.  For the reasons detailed herein, this court finds that the material facts are in dispute and that the plaintiffs have asserted sufficient facts which, if accepted, establish that their constitutional rights were violated.  As detailed below, the court concludes that the defendants are not entitled to qualified immunity.

### 1.      Qualified Immunity – In General

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from

harassment, distraction, and liability when they perform their duties reasonably.  The

protection of qualified immunity applies regardless of whether the government official's

error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law

and fact."  Pearson, 555 U.S. 231, 129 S. Ct. at 815 (quotations and citations omitted).

The determination whether an official is entitled to qualified immunity requires an

assessment as to whether the facts alleged or shown by the plaintiff "make out a violation

of a constitutional right" and, if so, "whether the right at issue was clearly established at

the time of defendant's alleged misconduct."  Id. at 232, 129 S. Ct. at 816 (quotations and

citations omitted).  "[T]he second, 'clearly established' step of the qualified immunity

analysis . . . in turn, has two aspects."  Maldonado v. Fontanes, 568 F.3d 263, 269 (1st

Cir. 2009).  As the First Circuit has described:

> One aspect of the analysis focuses on the clarity of the law at the time
> of the alleged civil rights violation.  To overcome qualified immunity,
> the contours of the right must be sufficiently clear that a reasonable
> official would understand that what he is doing violates that right.
> The other aspect focuses more concretely on the facts of the
> particular case and whether a reasonable defendant would have
> understood that his conduct violated the plaintiffs' constitutional
> rights.  Indeed, it is important to emphasize that this inquiry must be
> undertaken in light of the specific context of the case, not as a broad
> general proposition.

Id. (quotations, citations and alterations omitted).  Thus, "the relevant, dispositive inquiry

in determining whether a right is clearly established is whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted."  Id.

(quotations, citations and alterations omitted).

10

"[T]he Supreme Judicial Court of Massachusetts has held that MCRA claims are subject to the same standard of immunity for police officers that is used for claims asserted under § 1983." Raiche v. Pietroski, 623 F.3d 30, 40 (1st Cir. 2010). Thus, the qualified immunity analysis applies equally to the plaintiffs' claims under Section 1983 and their claims under the MCRA. See id. ("Because we have already determined that [the defendant] is not protected by qualified immunity with respect to the § 1983 excessive force claim, we likewise conclude that he is not entitled to qualified immunity against the MCRA claim alleging excessive force").

## 2.   Warrantless Entry

The defendants contend that they are entitled to qualified immunity on plaintiffs' claims based on the warrantless entry into their house because the plaintiffs have failed to establish that a constitutional violation occurred. As the defendants argue:

> In the instant case, Officer Hyland – before entering the home – twice announced "police" yet received no acknowledgment. He then heard "we'll turn the music down, but we are going to just turn it up again when you leave." Faced with the possibility of having to return to the house on repeated occasions to deal with the loud music that was disturbing the peace of the neighbors, Hyland entered the home. His action was justified, and this count of the Plaintiffs' complaint must be dismissed.

Defs. Mem. (Docket No. 42) at 6.

Contrary to the defendants' argument, however, the facts are very much in dispute. The plaintiffs have categorically denied that Officer Hyland announced himself before entering the premises. They have also denied that anyone claimed that the music was

11

going to be turned up the moment the Officer left.  Moreover, the plaintiffs have submitted

evidence showing that the music was turned down even before Officer Hyland entered the

home.  Viewing the evidence most favorably to the plaintiffs, a fact finder could conclude

that the police violated the plaintiffs' constitutional rights by entering the house without a

warrant, and that this principle was well-established at the time of the incident.  Therefore,

the record does not support the defendants' claim of qualified immunity at this time.

　　　　As the First Circuit has explained:

> We begin with the "basic rule ... that, absent consent or exigency, a
> warrantless search of the home is presumptively unconstitutional"
> under the Fourth Amendment. *Groh v. Ramirez,* 540 U.S. 551, 564,
> 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004). "To show exigent
> circumstances, the police must reasonably believe that 'there is such a
> compelling necessity for immediate action as will not brook the delay
> of obtaining a warrant.'"  *United States v. Samboy,* 433 F.3d 154, 158
> (1st Cir. 2005) (quoting *Fletcher v. Town of Clinton,* 196 F.3d 41, 49
> (1st Cir.1999)).  "Proof of exigent circumstances should be supported
> by particularized, case-specific facts, not simply generalized
> suppositions about the behavior of a particular class of criminal
> suspects." *Id.* (citation omitted).

DeMayo v. Nugent, 517 F.3d 11, 15 (1st Cir. 2008).  A jury may find that Officer

Hyland's fear that he might have to return to the home to have the music turned down a

second time to prevent the plaintiffs from disturbing the peace does not qualify as an

exigent circumstances.

　　　　Courts have recognized that "[w]hatever intimidating – and hence compelling

circumstances – the police may have to dispense with the warrant requirement to enter a

dwelling," the mere fact that there was loud music coming from a home, in and of itself,

does not rise to the level of such an exigency.  See Commonwealth v. Kiser, 48 Mass.

App. Ct. 647, 651, 724 N.E.2d 348, 352 (2000).  Thus, in rejecting a claim that a

complaint about a loud party constituted exigent circumstances which justified the

warrantless entry into a home, the Massachusetts Supreme Judicial Court in Kiser held:

> As the Supreme Court put it, 'it is difficult to conceive of a warrant-
> less home arrest that would not be unreasonable under the Fourth
> Amendment when the underlying offense is extremely minor.'  *Welsh
> v. Wisconsin,* 466 U.S. 740, 753, 104 S. Ct. 2091, 80 L. Ed. 2d 732
> (1984).  Playing music—even so loudly that it disturbs the
> neighbors—is an extremely minor offense.

Kiser, 48 Mass. App. Ct. at  651, 724 N.E.2d at 352.  Where, as here, there is evidence

that the music had been turned down even before the police entered the home, a jury

certainly could find that there were no exigent circumstances and that the warrantless

entry was unconstitutional.[2]

Finally, the plaintiffs have submitted record evidence through the testimony of

Brockton Police Chief (Ret.), William Conlon, that absent exigent circumstances, it was

against the police department's policy to enter a private dwelling solely because of loud

---

[2]  In United States v. Rohrig, 98 F.3d 1506 (6th Cir. 1996), the court found that "the
governmental interest in immediately abating an ongoing nuisance by quelling loud and disruptive
noise in a residential neighborhood [may be] sufficiently compelling to justify warrantless
intrusions" where "strict adherence to the warrant requirement would subject the community to a
continuing and noxious disturbance for an extended period of time without serving any apparent
purpose."  Id. at 1522.  However, even assuming Rohrig would be followed in this jurisdiction,
Rohrig has been limited to the situation where there is evidence of a "continuing and noxious
disturbance."  See, e.g., State v. Price, 134 Ohio App. 3d 464, 468-69, 731 N.E.2d 280, 283-84
(1999) (distinguishing Rohrig and finding that loud music, alone, was insufficient to justify
warrantless entry); United States v. Meixner, 128 F. Supp. 2d 1070, 1075 (E.D. Mich. 2001)
(Rohrig was predicated on finding that "the noise was continuous and offensive to neighbors" and
"it was necessary to immediately abate the nuisance").

music.  See Pls. Opp. (Docket No. 45) at 6.  In sum, there is evidence in the record that would support a finding that there were no exigent circumstances supporting a warrantless entry into the plaintiffs' home.  The need for such exigent circumstances was well established as of the time of the incident.  Therefore, the defendants have not established that they are entitled to qualified immunity at this time.[3]

### 3.    Excessive Force

The defendants contend that they are entitled to qualified immunity with respect to the claim of excessive force because the amount of force used by Officers Hyland and Johnson in effectuating the arrest of Henriqueta and Angela was reasonable; therefore, the plaintiffs have failed to establish a constitutional violation.  See Defs. Mem. at 7-8.  In light of the existence of disputed facts, this claim, too, must fail.  The plaintiffs have put forth sufficient evidence which, if accepted by the jury, would support a finding that the police used excessive force.  Moreover, there is no dispute that the Fourth Amendment right of an individual to be free from the use of excessive force by an arresting officer was well established as of the time of incident.  See Morelli v. Webster, 552 F.3d 12, 23-24 (1st Cir. 2009) (in light of "well-settled jurisprudence," defendant "was on notice that a police officer's use of excessive force would be offensive to the Constitution.").  Therefore, the defendants claim for qualified immunity must be denied.  See id. (summary

---

[3] For the same reason, the plaintiffs' direct claim based on the warrantless search (Count VII) will not be dismissed.

judgment on claim of qualified immunity should have been denied where plaintiff's version of facts establish that excessive force was used against unresisting plaintiff).

Where "an excessive force claim arises in the context of an arrest, the claim 'must be analyzed in light of the Fourth Amendment's prohibition of unreasonable searches and seizures.'" LaFrenier v. Kinirey, 478 F. Supp. 2d 126, 137-38 (D. Mass. 2007) (quoting Gaudreault v. Municipality of Salem, 923 F.2d 203, 205 (1st Cir. 1990)). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989) (quotations and citations omitted). Thus, the critical question is "whether 'the defendant officer employed force that was unreasonable under the circumstances.'" Raiche, 623 F.3d 30, 36 (1st Cir. 2010) (quoting Jennings v. Jones, 499 F.3d 2, 11 (1st Cir. 2007)).

In applying the test for reasonableness under the Fourth Amendment, courts must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396, 109 S. Ct. at 1872. However, in doing so, it is important to remain mindful that "[t]he 'reasonableness' of a particular use of force must

be judged from the perspective of a reasonable officer on the scene, rather than with the

20/20 vision of hindsight." Id.  As the Supreme Court has cautioned,

> [n]ot every push or shove, even if it may later seem unnecessary in
> the peace of a judge's chambers, violates the Fourth Amendment.
> The calculus of reasonableness must embody allowance for the fact
> that police officers are often forced to make split-second judgments –
> in circumstances that are tense, uncertain, and rapidly evolving –
> about the amount of force that is necessary in a particular situation.

Id. at 396-97, 109 S. Ct. at 1872 (internal quotations and citation omitted).

In the instant case, the question whether the defendants used reasonable force under

the circumstances cannot be resolved on summary judgment.  The plaintiffs have

portrayed a situation where a significant amount of force was used against non-violent

women, causing them serious bodily harm.  There is sufficient evidence, if accepted as

true, from which a jury can find that the plaintiffs' Fourth Amendment rights were

violated.

In a recent supplemental filing after oral argument on their motion for summary

judgment, the defendants' claimed, relying on Heck v. Humphrey, 512 U.S. 477, 114 S.

Ct. 2364, 129 L. Ed. 2d 383 (1994), that the plaintiffs' admission to sufficient facts in

their criminal proceedings barred their claim of excessive force as a matter of law.  See

Docket No. 54.  This contention is without merit.[4]  The question remains for the jury to

---

[4] In addition to being unsupported by the law, the defendants' claim is untimely.
According to the documents submitted by the defendants, the plaintiffs' pleas were taken on
March 15, 2010.  There is no apparent reason why the defendants could not have raised this
argument in their original filings in connection with their motion for summary judgment.

determine whether the police officers' use of force was reasonable under the circumstances.

It is well established that "[a] § 1983 claim is not cognizable if its success would necessarily imply the invalidity of an underlying conviction or sentence." Salcedo v. Town of Dudley, 629 F. Supp. 2d 86, 102 (D. Mass. 2009) (citing Heck, 512 U.S. at 486-87, 114 S. Ct. at 2732-33). While the First Circuit has not addressed the issue, this court will assume, without deciding, that an admission to sufficient facts and a continuance without a finding "constitutes a conviction for the purposes of the *Heck* limitation on subsequent § 1983 actions." Id. and cases cited. Nevertheless, there is nothing in the plaintiffs' claims for excessive force that conflicts with or challenges the criminal judgments against the plaintiffs. While the plaintiffs' conduct may be a factor in assessing the defendants' response, the fact that the plaintiffs may have engaged in unruly conduct does not give the police *carte blanche* to exert unreasonable force against them. The police may still be liable for use of excessive force.

The situation presented in the instant case is factually and legally distinct from that presented by Heck, where an inmate claimed that his conviction and imprisonment were unconstitutional. That claim directly called into question the legality of his conviction — a challenge which is barred in a § 1983 action. Heck, 512 U.S. at 486-87, 114 S. Ct. at 2372 ("We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or

sentence has been reversed on direct appeal, expunged by executive order, declared

invalid by a state tribunal authorized to make such determination, or called into question

by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.").  Similarly, in

Salcedo, the other case on which the defendants rely, the plaintiff was precluded from

claiming that she was being prosecuted for discriminatory reasons, and had not committed

any crime, after she had pleaded to sufficient facts to establish that she had committed a

crime.  Salcedo, 629 F. Supp. 2d at 102.  Thus, the plaintiff's § 1983 claim in Salcedo also

directly challenged the plaintiff's underlying conviction.  In contrast, in the instant case

the plaintiffs' admissions are not *per se* inconsistent with their claims that the police used

force that was unreasonable under the particular circumstances confronting the police at

the time of the arrests.  Since the plaintiffs' action, "even if successful, will not demon-

strate the invalidity of any outstanding criminal judgment against the plaintiff[s]," their

"action should be allowed to proceed[.]"  Heck, 512 U.S. at 487, 114 S. Ct. at 2372-73.

Consequently, the defendants' motion for summary judgment on the plaintiffs' excessive

force claim will be denied.

### 4.   Deliberate Indifference to Medical Needs

The defendants argue that they are entitled to qualified immunity on the plaintiffs'

claim of deliberate indifference to serious medical needs because "Plaintiffs never asked

for medical treatment and were not observed to require medical treatment, and therefore

cannot prove they were denied same."  Defs. Mem. at 8.  Again, the existence of a

material factual dispute precludes the entry of summary judgment on this issue as well.

18

The due process clause of the Fourteenth Amendment requires "responsible governmental authorities to provide medical care to persons who have been injured while being apprehended by the police." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990). "Generally, the standard applied [to such claims] is the same as the Eighth Amendment standard." Ruiz-Rosa v. Rullan, 485 F.3d 150, 155 (1st Cir. 2007). "The Eighth Amendment, in turn, imposes a duty to attend to a prisoner's 'serious medical needs.'" Gaudreault, 923 F.2d at 208 (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988)). "A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. "Government officials violate the Constitution if they exhibit 'deliberate indifference' to such needs." Id. (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976)).

"In order to establish deliberate indifference, the [plaintiff] must prove that the defendant[ ] had a culpable state of mind and intended wantonly to inflict pain." DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991). "The requisite state of mind may be manifested by the official['s] response to [the plaintiff's] known needs or by denial, delay, or interference with prescribed health care." Id. "While this mental state can aptly be described as 'recklessness,' it is recklessness not in the tort-law sense but in the appreciably stricter criminal-law sense, requiring actual knowledge of impending harm, easily preventable." Id.

19

According to the plaintiffs, they repeatedly asked for medical assistance for visible injuries but their requests were denied.  In addition, the plaintiffs contend that the police made racial slurs and were otherwise abusive to them.   These facts constitute evidence of a culpable state of mind.  Based on this record, the defendants are not entitled to qualified immunity on the claim of deliberate indifference to serious medical needs, as the plaintiffs have put forth sufficient evidence which, if believed, would establish a violation of their constitutional rights.

### C.    MCRA

In Counts II, IV and VI of the First Amended Complaint the plaintiffs allege that the defendants' conduct also violated the MCRA.  In support of these claims, the plaintiffs contend that the defendants violated their rights under the Fourth and Fourteenth Amendments by "unlawfully entering the plaintiffs' home, brutalizing Henriqueta and Angela during an unlawful arrest, assaulting Maria at the police station, and being medically indifferent to their injuries[.]"  Pls. Opp. at 17.  Since, however, the plaintiffs have failed to establish that the defendants' conduct amounted to interference or an attempt to interfere with the plaintiffs' rights through the use of threats, intimidation or coercion, the defendants' motion for summary judgment as to the MCRA claims must be allowed.

"To state a claim under the MCRA,[5] a plaintiff must show that (1) his exercise or enjoyment of rights secured by the constitution or laws of either the United States or the Commonwealth of Massachusetts (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion."  Farrah v. Gondella, 725 F. Supp. 2d 238, 247 (D. Mass. 2010).  "The purpose of the MCRA is to provide under state law a remedy 'coextensive with 42 U.S.C. § 1983, except that the Federal statute requires State action whereas its State counterpart does not.'"  Id. (quoting Batchelder v. Allied Stores Corp., 393 Mass. 819, 822-23, 473 N.E.2d 1128, 1131  (1985)).  Furthermore, under the MCRA, but not 42 U.S.C. § 1983, the plaintiff must identify a federal or state right that has been "interfered with by threats, intimidation, or coercion."  Flesner v. Technical Commc'ns Corp., 410 Mass. 805, 818, 575 N.E.2d 1107, 1115 (1991).  As defined by the Massachusetts Supreme Judicial Court,

> "[a] '[t]hreat' ... involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm.  'Intimida-tion' involves putting in fear for the purpose of compelling or deterring conduct .... ['Coercion' involves] the application to another

---

[5]  The MCRA, Mass. Gen. Laws ch. 12, § 11H, provides in relevant part: "Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured."  Mass. Gen. Laws ch. 12, § 11I authorizes civil actions by any person who has suffered the interference or attempted interference of the rights described in § 11H.

> of such force, either physical or moral, as to constrain [a person] to
> do against his will something he would not otherwise have done."

Farrah, 725 F. Supp. 2d at 247 (quoting Planned Parenthood League of Mass., Inc. v.

Blake, 417 Mass. 467, 474, 631 N.E.2d 985 (1994)) (alterations in original).  However,

"[a] direct violation of a person's rights does not by itself involve threats, intimidation, or

coercion." Id. at 248 (quotations and citations omitted).  Similarly, although it is true that

"arrest and detention is intrinsically coercive for MCRA purposes," Sietins v. Joseph, 238

F. Supp. 2d 366, 378 (D. Mass. 2003) (quotations, alteration and citations omitted), there

still must be some allegation that the defendant's conduct "was intended to coerce [the

plaintiffs] into refraining from the exercise of a right or privilege secured by law." Farrah,

725 F. Supp. 2d at 248.

In the instant case, as detailed above, the plaintiffs have put forth sufficient facts to

establish a violation of their constitutional rights.  This, however, is not enough.  The

plaintiffs have not put forth any evidence to support the conclusion that the defendants'

conduct was intended to coerce them into refraining from the exercise of a right or

privilege secured by law.  Consequently, they have failed to state a claim under the

MCRA.  See Santiago v. Keyes, 890 F. Supp. 2d 149, 154-56 (D. Mass. 2012) (violation

of constitutional rights standing alone does not constitute a violation of the MCRA absent

evidence of threats, intimidation or coercion); Titus v. Town of Nantucket, 840 F. Supp.

2d 404, 416 (D. Mass. 2011) (while plaintiff put forth sufficient facts to establish the use

of excessive force in violation of her Fourth Amendment rights, she failed to support a

claim under the MCRA); <u>Orwat v. Maloney</u>, 360 F. Supp. 2d 146, 164-65 (D. Mass. 2005) (while inmate may have established a violation of his Eighth Amendment right to be free from the use of excess force, that is a direct violation of his constitutional right and does not constitute a violation of the MCRA). The defendants' motion for summary judgment as to the MCRA claims will be ALLOWED.

### D.      **"Official Capacity" Claims Against Chief Conlon**

The plaintiffs have brought suit against retired Brockton Chief of Police William Conlon in his official capacity. The defendants have moved for summary judgment on the grounds that the plaintiff "has failed to allege a custom, policy or practice . . . evidencing a 'deliberate indifference' to the rights of [the City of Brockton's] inhabitants." Defs. Mem. at 10 (citing <u>Monell v. New York City Dep't of Soc. Servs.</u>, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). Plaintiffs counter by asserting that they have in fact alleged a "custom, policy or practice" of excess force and/or false arrest against immigrants. Pls. Opp. at 18. At oral argument, plaintiffs also contended that they had established a custom, policy or practice of unconstitutional home entries. This court finds, after a careful review of the record, that the plaintiffs have not established a custom, policy or practice and that, as a result, the claims against Chief Conlon will be dismissed.

"[A] suit against a public official in his or her official capacity is actually a suit against the entity that he or she represents[.]" <u>Stratton v. City of Boston</u>, 731 F. Supp. 42, 46 (D. Mass. 1989). The Supreme Court has long held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." <u>Monell</u>,

436 U.S. at 694, 98 S. Ct. at 2037.  "Instead, it is when execution of a government's policy or custom . . . by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694, 98 S. Ct. at 2037-38.  Therefore, a plaintiff seeking to impose liability on a municipality under Section 1983 must "demonstrate both the existence of a policy or custom and a causal link between that policy and the constitutional harm."  Santiago v. Fenton, 891 F.2d 373, 381 (1st Cir. 1989).  Here, the plaintiffs have failed to make the requisite showing.

The record is devoid of any evidence that the City fostered a custom, policy or practice of anti-immigrant actions.  A most liberal reading of the record at this stage is that anti-immigrant sentiment was a factor in the events that transpired between the defendant police officers and these particular plaintiffs.  There is no evidence of other instances or events which would support a more widespread mind-set or problem.  Similarly, the plaintiffs have not defined the home entry "policy" which they contend is unconstitutional. In fact, they cite to Chief Conlon's testimony to establish that the actions undertaken in the instant case, *i.e.*, entry due to loud music, was inconsistent with the policies of the police department.

Moreover, the record does not support the plaintiffs' claim that the defendants acted with "deliberate indifference" to the residents of Brockton.  See Pls. Opp. at 18. "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  Connick v. Thompson,

131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011) (internal quotations and citation omitted). Proof of deliberate indifference generally requires proof of a "pattern of similar constitutional violations[.]"  Id.  No such evidence has been presented here.

For all these reasons, the claims against Chief Conlon in his official capacity will be dismissed.

**E.     State Law Claims**

The defendants have moved for summary judgment on all of the state law claims brought against them.  As detailed herein, while the false arrest claims of Henriqueta and Angela must be dismissed, the motion for summary judgment as to the remaining state law claims will be denied.

**1.     Intentional Infliction of Emotional Distress**

The defendants contend that they are entitled to summary judgment on plaintiffs' claims for intentional infliction of emotional distress because there was probable cause to arrest Henriqueta, Angela and Maria, and because Manuel Barbosa has suffered no physical injury.  Based on a review of the record, this court concludes that there is sufficient evidence of intentional infliction of emotional distress to survive summary judgment.

> To sustain a claim of intentional infliction of emotional distress, a plaintiff must show (1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress.  *Agis v. Howard Johnson Co.,* 371 Mass. 140, 144-145, 355 N.E.2d 315 (1976), and cases cited.  To be

> considered extreme and outrageous, the defendant's conduct must be "beyond all bounds of decency and ... utterly intolerable in a civilized community." *Id.* at 145, 355 N.E.2d 315, quoting Restatement (Second) of Torts § 46 comment d (1965). Liability cannot be founded upon mere insults, threats, or annoyances. *Foley v. Polaroid Corp.,* 400 Mass. 82, 99, 508 N.E.2d 72 (1987).

Sena v. Com., 417 Mass. 250, 263-64, 629 N.E.2d 986, 994 (1994). Moreover, to the extent that police are merely carrying out their obligations as law enforcement officers, their conduct as a matter of law is not deemed extreme and outrageous. See Sietins v. Joseph, 238 F. Supp. 2d 366, 379 (D. Mass. 2003).

In the instant case, this court will assume that there was probable cause to arrest Henriqueta and Angela Barbosa, since they admitted to sufficient facts to state a crime. See discussion, supra. Nevertheless, the conduct the plaintiffs complain of, including the use of excessive force, abusive language, and deliberate indifference to obvious medical needs would, if accepted by the jury, go beyond the bounds of acceptable conduct. Thus, the plaintiffs have stated a claim for recovery as to Henriqueta and Angela. With respect to the plaintiff Maria, in addition to the intolerable conduct on the part of the police she has alleged, under her version of events there was not even probable cause for her arrest. Consequently, there is sufficient evidence of conduct which would support a finding of intentional infliction of emotional distress. See Poy v. Boutselis, 352 F.3d 479, 485-86 (1st Cir. 2003) (jury finds intentional infliction of emotional distress in connection with an arrest where police used excessive force).

With respect to the plaintiff Manuel, the defendants' contention that he is precluded from recovering because he suffered no physical injury is incorrect.  As the court held in Agis, 371 Mass. at 144, 355 N.E.2d at 318, "one who, by extreme and outrageous conduct and without privilege, causes severe emotional distress to another is subject to liability for such emotional distress even though no bodily harm may result."  The defendants' motion for summary judgment with respect to the claim of intentional infliction of emotional distress is denied.

## 2.      False Arrest

The defendants have moved for summary judgment on the plaintiffs' claims of false arrest.  Under Massachusetts law, the tort of "[f]alse imprisonment consists of '(1) intentional and (2) unjustified (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement.'"  Sietins, 238 F. Supp. 2d at 381 (quoting Ball v. Wal-Mart, 102 F. Supp. 2d 44, 55 (D. Mass. 2000)).  "Police officers may be liable for this tort 'unless the police officer had a legal justification' for the restraint."  Sietins, 238 F. Supp. 2d at 381 (quoting Rose v. Town of Concord, 971 F. Supp. 47, 51 (D. Mass. 1997)).  Such justification exists where "the officer had probable cause to arrest the suspect."  Sietins, 238 F. Supp. 2d at 381.  "The probable cause standard is a 'relatively low threshold' for police officers to establish."  Id. at 375 (quoting White v. Town of Marblehead, 989 F. Supp. 345, 349 (D. Mass. 1997)).  It is met "'when police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe

27

the suspect had committed or was committing a crime.'"  United States v. Jones, 432 F.3d

34, 41 (1st Cir. 2005) (quoting United States v. Young, 105 F.3d 1, 6 (1st Cir. 1997)).

In the instant case, Henriqueta and Angela have admitted to sufficient facts to

establish that they committed crimes in connection with the incident at their home.

Therefore, they cannot now claim that the police did not have probable cause to arrest

them.  Consequently, their claim of false arrest must fail.  The record, however, is devoid

of information as to what happened to the charges brought against Maria.  Based on her

version of events, the police lacked probable cause to arrest her.  Therefore, Maria's claim

for false arrest survives the motion for summary judgment, while the claims of Henriqueta

and Angela for false arrest will be dismissed.

### 3.      Assault and Battery

Finally, the defendants have moved to dismiss the plaintiffs' claims of assault and

battery on the grounds that they "had probable cause to arrest the Plaintiffs and used only

necessary force[.]"  Defs. Mem. at 11.  Again, the existence of disputed facts compels the

conclusion that the motion for summary judgment be denied.

"Assault and battery is the 'intentional and unjustified use of force upon the person

of another, however slight, or the intentional doing of a wanton or grossly negligent act

causing personal injury to another.'"  Sietins,, 238 F. Supp. 2d at 380 (quoting Jesionowski

v. Beck, 937 F. Supp. 95, 105 (D. Mass. 1996)).  Under Massachusetts law, "'an officer

authorized to make an arrest may use such force as is reasonably necessary to effect the

arrest.'"  Id. (quoting Julian v. Randazzo, 380 Mass. 391, 396, 403 N.E.2d 931, 934

(1980)) (punctuation omitted).  Where, as here "a plaintiff alleges both a § 1983 excessive force claim and common law claims for assault and battery, [the] determination of reasonableness of the force used under § 1983 controls [the] determination of the reasonableness of the force used under the common law assault and battery claims." Raiche, 623 F.3d at 40.  Because, as detailed above, the relevant facts relating to the use of excessive force against the plaintiffs are in dispute, the defendants' motion for summary judgment must be denied with respect to the assault and battery claim.

## IV.  CONCLUSION

For all the reasons detailed herein, the defendants' motion for summary judgment (Docket No. 41) is ALLOWED IN PART and DENIED IN PART as follows:

1. The motion of the defendants Bryan Maker, Kenneth Lofstrum, Michael Dube, Mark Celia, Anthony Giardini, the John Doe defendants and William K. Conlon in his official capacity as Chief of Police, is ALLOWED, and the claims against them are dismissed.

2. The defendants' motion for summary judgment as to the claims under the Massachusetts Civil Rights Act is ALLOWED, and Counts II, IV and VI of the First Amended Complaint are dismissed.

3. The defendants' motion for summary judgment as to Henriqueta and Angela Barbosa's claims of false arrest is ALLOWED, and Count VIII of the First Amended Complaint is dismissed.

4. Except as provided above, the motion for summary judgment is DENIED.

        / s / Judith Gail Dein
        Judith Gail Dein
        United States Magistrate Judge

29