UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIA BARBOSA, HENRIQUETA ) <br> BARBOSA, MANUEL BARBOSA, ) <br> and ANGELA BARBOSA, ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> THOMAS HYLAND, JESSE DRANE, ) <br> BRIAN DONAHUE, STEVEN JOHNSON, ) <br> FRANK BAEZ, EMANUEL GOMES, ) <br> and LEON McCABE, ) <br> ) <br> Defendants. ) | CIVIL ACTION <br> NO. 11-11997-JGD |

# MEMORANDUM OF DECISION AND ORDER ON
# PLAINTIFFS' PETITIONS FOR ATTORNEYS' FEES AND COSTS

May 6, 2014

DEIN, U.S.M.J.

## I. INTRODUCTION

This action arises out of an altercation between the plaintiffs and various Brockton police officers on November 15, 2008 at the plaintiffs' home. A jury-waived trial was held before this court on July 15, 16, 17 and 18, 2013. The court issued extensive Findings and Rulings on December 2, 2013. On January 23, 2014, judgment was entered in favor of the plaintiffs as follows:

    1.    In favor of Henriqueta Barbosa vs. Thomas Hyland and Bryan Donahue: $25,000 plus interest;

    2.    In favor of Manuel Barbosa vs. Thomas Hyland and Bryan Donahue: $7,500 plus interest;

3. In favor of Henriqueta Barbosa vs. Thomas Hyland: $5,000 plus interest;

4. In favor of Angela Barbosa vs. Jess Drane: $7,500 plus interest; and

5. In favor of Maria Barbosa vs. Steven Johnson and Frank Baez: $15,000 plus interest.

On April 28, 2014, this court issued a decision denying the defendants' motion for a new trial.

This matter is presently before the court on the Plaintiffs' Petition for Attorneys' Fees and Costs (Docket No. 106) as supplemented (Docket No. 127). As detailed therein, the plaintiffs are seeking to recover $175,026.75 in fees, and $3,662.81 in costs, for a total of $178,689.56. The defendants oppose the request and ask either that the request for fees and costs be denied in its entirety, or that the requested hourly and total amounts be significantly reduced.

After careful consideration of the parties' arguments, the Plaintiffs' Petition for Attorneys Fees and Costs is allowed in part and denied in part. Plaintiffs are awarded $165,701.75 in fees, and $3,662.81 in costs.

## II. ANALYSIS

### A. Standard of Review

In accordance with the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, a "prevailing party" in a civil rights action "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S. Ct. 1933, 1937, 76 L. Ed. 2d 40 (1983) (internal

quotation and citation omitted).  Reasonable costs also are recoverable under § 1988.

Palmigiano v. Garrahy, 707 F.2d 636, 637 (1st Cir. 1983).  To be a prevailing party, the

plaintiff must "succeed on any significant issue in litigation which achieves some of the

benefit the parties sought in bringing suit."  De Jesus Nazario v. Morris Rodriguez, 554

F.3d 196, 199 (1st Cir. 2009) (quoting Hensley, 461 U.S. at 433, 103 S. Ct. at 1939)

(additional citation omitted).  The standard to be applied in the instant case is defined by

the "lodestar calculation" normally used to award attorneys' fees.

## **The Lodestar Calculation**

The De Jesus Nazario court summarized the lodestar calculation as follows:

> The lodestar is determined by multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure.  In crafting its lodestar, the trial court may adjust the hours claimed to remove time that was unreasonably, unnecessarily or inefficiently devoted to the case, and subject to principles of inter-connectedness, the trial court may disallow time spent litigating failed claims.  Finally, the trial court has the discretion to adjust the lodestar itself upwards or downwards based on several different factors, including the results obtained, and the time and labor required for the efficacious handling of the matter.
>
> In making this adjustment, the trial court should be mindful of the complexities of defining the results obtained.  As we have already noted, in determining the quality of the plaintiff's results, we look to a combination of the plaintiff's claim-by-claim success, the relief achieved, and the societal importance of the rights vindicated.  We have further noted that the computational principles employed to evaluate a skimpy damage award or shortfall in other relief are difficult to quantify, and have described a constellation of potential outcomes, and permissible attorney's fees calculations, under each. In particular, we have emphasized that though a meager damage award may be taken into consideration, the [Supreme] Court has squarely disclaimed the proposition that fee awards under § 1988

3

> should be proportionate to the amount of damages a civil plaintiff actually recovers.
>
> Similarly, while a trial court can and should reduce the lodestar to disallow fees for time inefficiently, unnecessarily or unreasonably expended, it also must be mindful of the realities of modern litigation. It is of course true that each fee case generally rests on its own congeries of facts, but nevertheless, we have previously reversed decisions to substantially reduce hours allowed for pre-trial proceedings, where we have found that significant time was expended and the plaintiff was not responsible for the delay.... Thus, although it is possible, and indeed likely, that the district court may discount some of the time plaintiff's counsel spent in pre-trial proceedings, the district court should take care to excise only fat, leaving sinew and bone untouched. Beyond these general observations, we leave the determination of a reasonable fee to the sound discretion of the trial court.

554 F.3d at 207-08 (internal footnotes, citations and quotations omitted). The burden is on the party claiming fees to prove the reasonableness of the hours claimed. Burke v. McDonald, 572 F.3d 51, 63 (1st Cir. 2009).

This court has addressed this dispute in extensive detail in this court's Findings of Fact and Rulings of Law (Docket No. 98), and the details will not be repeated here. The parties are well aware of the work that went into the trial of this case. This court finds that, as a general statement, plaintiffs' counsel were well-prepared, and presented the plaintiffs' cases efficiently and effectively. If anything, the pleadings submitted were too concise, and the court would have appreciated more detailed analyses. The case went in smoothly, and counsel were cooperative. Lead trial counsel for the plaintiffs was a highly-effective litigant, skilled in courtroom techniques. The detailed time sheets do not reflect over-billing or excessive time spent. I accept Mr. Kazarian's representation that

duplicative time has been omitted, and that internal consultations between counsel have been billed only by counsel at the lower rates. See Kazarian Aff. (Docket No. 108) ¶ 7.

As detailed herein, this court finds that some reduction in time is appropriate given that the complaint was drafted to include six named defendants who were dismissed at the summary judgment stage, and two additional defendants who were dismissed after trial. In addition, as originally pleaded the complaint raised claims of false arrest and a violation of the Massachusetts Civil Rights Act, which were dismissed at the summary judgment stage, and claims of intentional infliction of emotional distress as well as claims based on alleged deliberate indifference to plaintiffs' medical needs, which were dismissed after trial. While these additional defendants and claims did not enlarge the scope of discovery, they did require additional research, drafting and investigation for which the defendants should not be liable.

Applying the relevant principles, the court's analysis is as follows.

### B.     Hourly Rates

The plaintiffs are seeking to recover for the work done by lead counsel, Charles Kazarian, at the rate of $425/hour, work done by a senior associate, Christopher Malloy, at the rate of $310/hour, and work done by an experienced part-time attorney, Suzanne Morse, at the rate of $250/hour. Mr. Kazarian has been practicing law for 33 years, having graduated as the valedictorian of his class at Northeastern Law School in 1980. He has been qualified by the Massachusetts Superior Court as an expert witness on legal malpractice, lawyer over-billing and ethics issues. Mr. Malloy has been practicing law

since 2003, when he graduated from Suffolk University Law School, and his experience has included work as in-house counsel as well as with another law firm. Ms. Morse is a 2002 graduate from Boston University School of Law, and has been practicing since then. I find that these rates are reasonable for counsel of their experience in the community.

The plaintiffs have submitted two affidavits from Attorney Kazarian as well as the Affidavit of Anthony Doniger, a partner in the law firm of Sugarman, Rogers, Barshak & Cohen. Therein, counsel attests that the rates seeking to be charged "are in all respects fair and reasonable and well within the market norm for litigators in Boston with their experience." Doniger Aff. (Docket No. 109) ¶ 5. Unfortunately, the affidavits do not provide additional details as to how this conclusion was reached, other than to say generally that Attorneys Kazarian and Doniger are familiar with rates charged by attorneys with similar experience in Boston. However, the plaintiffs have also cited to the cases of Rogers v. Cofield, 935 F. Supp. 2d 351, 382 (D. Mass. 2013), and Fronk v. Fowler, 22 Mass. L. Rptr. 366 (Mass. Super. Ct. Feb. 23, 2007), where the courts found rates of $450/hour and higher to be reasonable for partners in Boston with less experience than Mr. Kazarian during the time period that coincides with the work on this case. Based on the information provided, this court finds that the rates sought to be charged are reasonable.

The defendants' principal challenge to the hourly rates charged is that the plaintiffs' counsel were not experienced in litigating § 1983 cases. However, I find that this contention is refuted by the Affidavits submitted by Mr. Kazarian. For example, he

6

attested that he has "litigated and tried state and Federal civil rights cases involving wrongful conduct by police and corrections officers and officials throughout my career." Kazarian Aff. (Docket No. 108) ¶ 2. Similarly, Ms. Morse has had extensive experience representing both the police officers' union and individual police officers in § 1983 cases involving claims of misconduct and civil rights violations. Id. ¶ 6. I find that counsel had sufficient experience to warrant charging the hourly rates requested.

On the other hand, this court rejects Mr. Kazarian's request for an "enhanced" rate of $500/hour. In Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010), the Supreme Court recognized that a fee "enhancement may be appropriate where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value," or "if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted" or where there are "extraordinary circumstances in which an attorney's performance involves exceptional delay in the payment of fees." Id. at 554-56, 130 S. Ct. at 1674-75. These circumstances do not exist in the present case. Suit was filed in 2011 and the case was tried in 2013. There was not excessive delay. Moreover, while hotly contested, in this court's view the factual issues were fairly straightforward, and involved events which occurred in a limited time period of several hours over the course of two days. Similarly, while there were a number of legal issues raised, they did not involve any groundbreaking issues. In fact, among the reasons why the plaintiffs prevailed, and the defendants were not entitled to qualified immunity, was that the law

was clear that the defendants' warrantless entry into the plaintiffs' home was unconstitutional. Under such circumstances, there is no basis to enhance the hourly rate being sought.

### C.   **Defendants' Objections to Hours Expended**[1]

#### Scope of Work

The defendants originally moved for summary judgment on all counts of the complaint. (Docket No. 41). This motion was supplemented to add a defense that the plaintiffs' claims of excessive force were barred by the fact that Henriqueta and Angela had pleaded to sufficient facts to the criminal charges brought against them. (Docket No. 53). This court issued its decision on June 10, 2013. (Docket No. 60). The plaintiffs agreed that the claims against the defendants, Bryan Maker, Kenneth Lofstrum, Michael Dube, Mark Celia, Anthony Giardini and the John Doe defendants, should be dismissed. This court ruled that the plaintiffs failed to establish a claim against William Conlon in his official capacity as Chief of Police, and the claims against him were dismissed. The court also dismissed all the plaintiffs' claims under the Massachusetts Civil Rights Act, and the claims of false arrest asserted by the plaintiffs, Henriqueta and Angela Barbosa. The motion for summary judgment was otherwise denied. This left for trial the plaintiffs' principal constitutional and state law claims relating to the alleged unlawful entry into the plaintiffs' home without a warrant, the use of excessive force

---

[1] The court will address the defendants' principal objections. This court has considered all of the objections, even if not addressed herein.

8

during their arrests, and the defendants' alleged indifference to their medical needs while in custody.

On June 19, 2013 and July 12, 2013, the defendants filed seven motions in limine in anticipation of trial. (Docket Nos. 65, 66, 67, 68, 69, 71, 75). On July 12, 2013, the defendants filed a "Motion for Reconsideration" of the court's summary judgment decision, raising for the first time the contention that they were entitled to qualified immunity on the basis of the community caretaking doctrine. (Docket No. 78).[2] The court denied the motion on July 15, 2013 and the trial started that day. While waiting for a jury pool, the parties decided to proceed jury-waived.

Following trial, the court found (1) in favor of Henriqueta and Manuel Barbosa against Thomas Hyland and Brian Donahue for their unlawful entry into the plaintiffs' home; (2) in favor of Henriqueta Barbosa against Thomas Hyland on her federal and state law claims of excessive force; (3) in favor of Angela Barbosa against Jesse Drane on her federal and state law claims of excessive force; and (4) in favor of Maria Barbosa against Steven Johnson and Frank Baez on her federal and state law claims of excessive force and false arrest. (Docket No. 98). This court further dismissed the claims against Emanuel Gomes and Leon McCabe (which the plaintiffs did not contest), and dismissed the claims of intentional infliction of emotional distress and deliberate indifference to the

---

[2] The defendants take strong exception to the characterization of this pleading as a second motion for summary judgment (as opposed to a motion for reconsideration). However, since the pleading raised an entirely new contention, this court finds its characterization as a second motion for summary judgment to be entirely appropriate.

9

plaintiffs' medical needs. The existence of these defendants and claims did not alter the scope of testimony presented at trial.

After judgment, the parties disagreed as to the appropriate interest rate, which required briefing and a decision by the court. (Docket Nos. 100, 103-04). The defendants also moved for a new trial, which required briefing and oral argument. (Docket Nos. 112-14, 125, 128). This court denied the motion in a decision dated April 28, 2014. (Docket No. 129).

## **Plaintiffs as Prevailing Parties**

The defendants contend that the plaintiffs should not be entitled to any attorneys' fees given the number of defendants who were dismissed and the number of claims that were dismissed. While the complaint may have asserted too many claims against too many people, it was drafted at a time when the role of each of the police officers in the relevant events was unknown. As detailed in this court's Findings and Rulings, multiple police cars responded to a simple noise complaint. It is not surprising that the plaintiffs were not able to sort out everyone's roles without discovery. The plaintiffs did not challenge, and in fact agreed to, the dismissal of those named defendants who discovery revealed were not responsible for the unconstitutional conduct.

More significantly, while this court finds that some reduction in time spent drafting pleadings is appropriate, see infra, the crux of the case did not change, nor did the scope of discovery. Where, as here, the claims asserted involved "a common core of facts" and "related legal theories," this court will not consider the lawsuit as a "series of

discrete claims" but, rather, will "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Hensley, 461 U.S. at 435, 103 S. Ct. at 1940. Viewing the case in that way, the plaintiffs clearly prevailed on the fundamental issues that formed the basis of their complaint from the outset.

## Allegedly Duplicative and Superfluous Work

The defendants challenge approximately $100,000 of the fees being sought as being "double-billed, superfluous or otherwise unnecessary." As detailed herein, these arguments result in a small reduction in the amount to which plaintiffs are entitled.

As an initial matter, the defendants consistently characterize as "double-billed" work that was done over the course of several days. For example, the defendants refer to the following time entries as examples of double-billing[3]:

| | | |
|---|---|---|
| 10/7/11 | CPK work on draft complaint | 4.5 hours |
| 10/21/11 | CPK revise and edit complaint | 3.3 hours |
| 10/30/11 | CPK research and review complaint | 3.7 hours |
| 10/31/11 | CPK perform edits on first draft of complaint | 1.8 hours |
| 11/7/11 | CPK meet with clients, edit complaint | 2.1 hours |
| 11/10/11 | CPK attention to final edits to complaint | 3.6 hours |
| 2/9/12 | CPK work on amended complaint | 3.3 hours |

In this court's view, this was not duplicative billing. Rather, the time charged reflected work over the course of several days. The fact that counsel worked on the same task over the course of several days does not make it duplicative or unnecessary. Having reviewed

---

[3] Defendants have numbered these entries as 3, 4, 6, 7, 9, 10, 11.

the defendants' objections, this court does not find that plaintiffs' counsel is billing for duplicative work.

The defendants also object to various entries as being "excessive," without further explanation. This court has reviewed these entries and has found the time to be reasonable. For example, the fact that lead counsel spent 5.2 hours preparing all of the Barbosas for their depositions is not in this court's view "excessive," especially when one considers the language barriers and the fact that each member of the family had a different story to tell.[4]

The defendants have characterized various time charges as being "superfluous" — again without explanation. This court has reviewed these entries and again does not concur. For example, the fact that counsel spent .10 hours on "trial housekeeping" is not superfluous.[5] Rather, it reflects the fact that there are a number of items that simply have to be taken care of for a trial to run smoothly. In short, this court has reviewed the defendants' objections to virtually every entry and, except as provided herein, found the objections to be unpersuasive.

The defendants contend that certain entries are for "unnecessary" work. See Defs. Opp. Mem. (Docket No. 111) at 10). Included in this objection is a charge of 1.5 hours of Attorney Malloy's time addressing travel issues of the Barbosas who were having

---

[4] This is entry #18

[5] This is entry #109.

trouble returning from an out-of-country trip in time for trial due to weather problems.[6]

This court agrees that this time should not be charged to the defendants, and $465 will be deducted.

The defendants also challenge the charge of .6 hours of Attorney Kazarian's time spent interviewing John Andrade, who did not testify at trial.[7] Given the limited time spent on this item, and the fact that such an interview would be logical trial preparation for the plaintiffs, this time will not be deducted

The defendants challenge 9.2 hours of Attorney Malloy's time reviewing trial testimony on July 22 and 23, 2013 as being unnecessary.[8] This work was done in connection with preparing proposed findings of fact. This court does not find this work to be "unnecessary." However, as detailed in the next section, this court will make some reduction in this time due to the plaintiffs' lack of success on various issues.

## Mediation

Finally, in connection with the parties' unsuccessful mediation, the plaintiffs charged 13.5 hours of Attorney Malloy's time at the rate of $310/hour to draft the mediation statement.[9] This comes to $4,185. In addition, Attorney Malloy charged

---

[6] This is entry #142.

[7] This is entry #159.

[8] These entries are #229-32, 234-39.

[9] These are entries #34, 37, 41 and 48.

13

3 hours of his time[10] and Attorney Kazarian billed 4.5 hours of his time[11] in connection with attending the mediation, for a total charge of $2,842.50. This court does not find it inappropriate for two attorneys to have attended the mediation. Nor does the fact that there is a discrepancy in the amount of time charged cause any concern, as the difference can be explained by different preparation, travel time or meeting time with clients. Nevertheless, since the mediation took place at a time when there were still an excessive number of defendants, and unsuccessful legal theories still remained in the case, this court finds that some reduction in time spent preparing the mediation statement is appropriate. Therefore, this court finds that 5 hours preparing the mediation memorandum should have been sufficient, and the court will reduce the charges by 8.5 hours at $310/hour for a total of $2,635.

### D. Court's Lodestar Calculation

In this court's view, some reduction in the time charges is appropriate given the number of defendants who were dismissed, as well as the number of legal theories on which the plaintiffs did not prevail. As noted above, this court does not find that these additional defendants and claims altered the scope of discovery or trial. However, it did affect various pleadings. Therefore, this court rules as follows:

---

[10] This is entry #52.

[11] This is entry #50.

Attorney Kazarian spent approximately 30 hours researching, drafting and reviewing the original complaint.[12] While some of the work done is described specifically in the time sheets, most of it is not. This court finds that a reduction of 5 hours is appropriate to cover the legal claims and defendants who were dismissed. This will result in a deduction of $2,125 (5 x $425 = $2,125).

Attorney Morse spent close to 22 hours researching and drafting the opposition to defendants' motion for summary judgment.[13] Attorney Kazarian attempted to negotiate the dismissal of some of the defendants "in lieu of the summary judgment hearing," but was unsuccessful.[14] Thus, there was no opposition to the dismissal of most of the defendants who were dismissed and no time spent drafting an opposition so there is no basis to reduce the hours being sought on this ground. However, since the summary judgment opposition included federal and state legal claims that were unsuccessful, this court concludes after a review of the pleadings that a reduction of 4 hours of Attorney Morse's time is appropriate, for a total of $1,000 (4 x $250 = $1,000).

Research was done in connection with proposed jury instructions and, later, proposed findings and rulings, which included the unsuccessful federal and state law claims. Attorney Morse spent approximately 10 hours on these tasks,[15] Attorney Malloy

---

[12] Entries #1-4, 6-10.

[13] Entries #61, 63-67

[14] Entry #70.

[15] E.g., entries #100, 116, 228, 233, 247.

spent approximately 36 hours on these tasks,[16] and Attorney Kazarian spent approximately 5.2 hours.[17] The time sheets are not sufficiently detailed to divide the work into successful and unsuccessful claims. After a review of the pleadings, however, this court has concluded that Attorney Malloy's hours should be reduced by 10 hours for a total of $3,100.

This court has reviewed the expenses, to which the defendants have not objected, and found them to be appropriate.

## **CONCLUSION**

For all the reasons detailed herein, the plaintiffs shall be awarded $165,701.75 in legal fees, calculated as follows:

---

[16] E.g., entries #131, 133, 240-41, 243-46, 248, 251-53, 258, 260-61.

[17] Entry #250.

| | | |
|---|---|---|
| Fees Requested | | $175,026.75 |
| Less Travel Issue | 465.00 | |
| Less Mediation Hours | 2,635.00 | |
| Less Drafting Complaint | 2,125.00 | |
| Less Summary Judgment Hours | 1,000.00 | |
| Less Findings and Rulings Hours | 3,100.00 | |
| | | - $9,325.00 |
| | | $165,701.75 |

In addition, the plaintiffs shall be awarded $3,662.81 in costs.

                                                  / s / Judith Gail Dein  
                                                  Judith Gail Dein  
                                                  U.S. Magistrate Judge